**Affirmed and Memorandum Opinion filed August 25, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00658-CR

### QUINCY CALHOUN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1262446**

## M E M O R A N D U M   O P I N I O N

Appellant Quincy Calhoun appeals his conviction for aggravated robbery. *See* Tex. Penal Code Ann. § 20.03 (West 2011). In a single issue, appellant challenges the sufficiency of the evidence to support the trial court's finding that appellant violated the conditions of his community supervision. Concluding that there is sufficient evidence to support the trial court's finding, we affirm.

BACKGROUND

Appellant entered a plea of guilty to the offense of aggravated robbery without an agreed recommendation on punishment from the trial court. On May 17, 2011, the trial court signed an order deferring adjudication of appellant's guilt and placing appellant on deferred adjudication community supervision for a period of ten years. As conditions of community supervision, appellant was ordered, among other things, to:

- Commit no offense against the laws of this or any other State or of the United States;

- Report immediately, in person, to the Community Supervision Officer for the 338th District Court on the 17th day of May 2011 and continue to report to the Community Supervision Officer on the 17th of each month for the duration of the community supervision term;

- Work faithfully at suitable employment and present written verification of employment (including all attempts to secure employment) to the Community Supervision Officer;

- Perform a total of 240 hours of community service at the rate of eight hours per month;

- Pay a supervision fee of $60.00 per month for the duration of the term of community supervision;

- Pay a fine of $500.00 and court costs at the rate of $40.00 per month; and

- Pay laboratory fees of $5.00 per month for the duration of the community supervision term.

On March 14, 2014, the State filed a motion to adjudicate appellant's guilt on the stated basis that appellant had violated the above-listed conditions of community supervision. The trial court held a hearing on the State's motion, at which appellant entered pleas of "not true" to each of the State's allegations.

Darlene Salazar, a community supervision officer for Harris County,

testified that the community supervision office received notice that appellant had been arrested for theft. She also testified that appellant failed to report to the community supervision office in November 2011 and January 2014. In November 2011, appellant contacted the office and said that he did not report due to hospitalization, but he failed to report after he was released from the hospital. In January 2014, appellant failed to report or make contact with the community supervision office. Over the course of appellant's community supervision term, he never reported proof of employment or verification of attempts to secure employment. Appellant completed no community service hours during the term of his community supervision. During a portion of the community supervision term, appellant was physically unable to perform community service. On November 15, 2012, he was released from medical restrictions and permitted to perform community service. At the time the motion to adjudicate was filed, appellant was delinquent in the amount of $867.00 in fines and court costs, and $1,253.50 in supervisory fees.

Officer M. R. Burdick of the Houston Police Department testified that on September 3, 2013, he was patrolling an area of northeast Houston he described as a high-crime area. Burdick saw a late-model light-colored Dodge Charger automobile leave the area at a high rate of speed, and he advised a marked patrol unit to conduct a traffic stop. The patrol unit stopped the car and identified appellant as the driver and lone occupant of the vehicle. Appellant had no driver's license with him. When searching the car, officers discovered a checkbook not in appellant's name, but in the name of a Hispanic female.

Appellant was released, but officers followed up on the checkbook. Burdick's investigation revealed that on August 18, 2013, the checkbook had been reported stolen from a vehicle parked outside a day care center. On September 18,

2013, the daycare center reported to Burdick that another individual had been robbed by a person driving a white Dodge Charger. The license plate number reported by the daycare patron matched the license plate of the car appellant had been driving on September 3, 2013. Burdick also learned that appellant previously had been arrested for burglarizing another vehicle at an elementary school in Houston. At the time of that arrest, appellant was driving the same white Dodge Charger. Appellant was not charged with the offense committed at the elementary school. The Dodge Charger was not registered in appellant's name, but maintenance documents found inside the vehicle revealed that appellant had been obtaining service on the vehicle for approximately eight to ten months. The vehicle was registered to appellant's mother-in-law.

Burdick determined that appellant had committed several burglaries of motor vehicles, mostly outside of daycare centers in the early morning when mothers of small children tended to leave their belongings in their vehicles. One of the victims, Tonya Fielder, reported a stolen mobile phone. Burdick found the individual who purchased that phone, Elizabeth Pineda, and showed her a photospread lineup. Pineda identified appellant as the person who sold her the mobile phone.

Tonya Fielder testified that she was dropping off her four-month-old at the daycare center on the morning of September 18, 2013. As she drove toward the daycare she saw a man driving a white Dodge Charger with the driver's window open. Fielder noticed the car because it was almost identical to her own car. She drove to the front door of the daycare center, left the car running and took the child inside. When Fielder returned to her car, she noticed that her phone and purse were gone. Fielder reported the theft to the daycare director, who accessed the surveillance video of the front door. The video showed a man drive a white Dodge

Charger to the front door of the daycare, get out, and pretend to get a child out of the back seat. When another patron of the daycare left the driveway the man very quickly went to Fielder's car and removed her phone and purse. The man then got back into the white Dodge Charger and drove away. Fielder identified appellant as the man she had seen driving the white Dodge Charger.

Fielder immediately canceled her credit cards and suspended her mobile phone number. After one or two days, Fielder re-activated her phone number and dialed it. When Pineda answered the phone Fielder asked how she had obtained the phone. Pineda told Fielder she purchased the phone on Craig's List from a young man driving a white Dodge Charger. Fielder researched the postings on Craig's List and discovered that the man was selling several mobile phones on the website, including hers. Fielder then reported what she had learned to Officer Burdick.

Appellant testified on his own behalf. He denied stealing Fielder's phone and purse and denied meeting Pineda and selling her a phone. Appellant admitted missing two appointments with the community supervision officer, but explained that he missed them due to a medical condition. Appellant further testified that his medical condition prevented him from obtaining employment or performing community service. Appellant testified that his doctor was supposed to send a medical excuse to the community supervision officer, but Salazar reported that she had not received a medical excuse. Appellant claimed he did not pay his fines and supervision fees because he was unable to work. Appellant testified that his wife used the white Dodge Charger to drive to and from her place of employment, and that he did not have access to the car during her working hours.

At the conclusion of appellant's evidence, the trial court found true the allegations that appellant committed theft, failed to obtain employment, failed to perform community service, and failed to pay fines and fees. The trial court found

5

not true the allegation that appellant failed to report to the community supervision office.

## ANALYSIS

In a single issue, appellant argues that the trial court abused its discretion in revoking his community supervision because there was insufficient evidence presented at the hearing on the motion to adjudicate guilt to support the allegations made in the motion. Our review of the trial court's order revoking community supervision is limited to determining whether the trial court abused its discretion. *See Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980). When a trial court finds several violations of probationary conditions, we affirm the order revoking probation if the proof of any single allegation is sufficient. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) ("We need not address appellant's other contentions since one sufficient ground for revocation will support the court's order to revoke probation."); *Hart v. State*, 264 S.W.3d 364, 367 (Tex. App.—Eastland 2008, pet. ref'd); *Greer v. State*, 999 S.W.2d 484, 486 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). In his issue on appeal, appellant challenges the sufficiency of the evidence to "support the allegations made in the motion." However, appellant presents arguments challenging only the sufficiency of the evidence to support the misdemeanor theft allegation. Because we need not address the sufficiency of the evidence to support all grounds for revocation, we will address appellant's contention concerning the misdemeanor theft allegation.

In community supervision revocation cases, a claim of insufficient evidence is limited to the traditional legal-sufficiency analysis, in which we view the evidence in the light most favorable to the decision to revoke. *See Hart*, 264 S.W.3d at 367. The State has the burden to establish by a preponderance of the

6

evidence that appellant committed a violation of the terms and conditions of community supervision. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The preponderance-of-the-evidence standard is met when the greater weight of the credible evidence before the trial court supports a reasonable belief that a condition of community supervision has been violated. *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006). When the State fails to meet its burden, it is an abuse of discretion for the trial court to issue a revocation order. *Cardona*, 665 S.W.2d at 493–94. In a revocation proceeding, the trial judge is the sole trier of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Diaz v. State*, 516 S.W.2d 154, 156 (Tex. Crim. App. 1974).

The State alleged, among other violations, that appellant violated his community supervision by committing the offense of misdemeanor theft. A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it. Tex. Penal Code Ann. § 31.03(a) (West Supp. 2014).

Appellant contends that the State's proof fell short because the State only proved that appellant occasionally drove a white Dodge Charger that did not belong to him, and that someone driving a white Dodge Charger burglarized Fielder's vehicle. Appellant discounts both Fielder's identification of him as the individual who burglarized her vehicle and Pineda's identification of appellant as the individual who sold her the stolen phone.

Appellant's argument amounts to an attack on the credibility of the State's evidence. *See Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). Fielder testified that she recognized appellant as he drove by the daycare center before she dropped her child off. She also recognized appellant and his vehicle in the surveillance video despite the grainy nature of the video recording. Pineda testified that appellant sold her a phone from an internet posting on Craig's List.

7

Fielder testified that the phone Pineda purchased was the one stolen from her car at the daycare center. Fielder recognized scratches on the back of the phone, and her phone number was still connected to the phone. The factfinder is the sole judge of the credibility of the witnesses and strength of the evidence, and we must presume that the factfinder resolved any conflicts in favor of the prevailing party. *Bargas v. State*, 252 S.W.3d 876, 887 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

We conclude the greater weight of credible evidence before the trial court supports the trial court's reasonable belief that it is more probable than not that appellant violated a condition of community supervision by committing theft. We overrule appellant's sole issue.

We affirm the trial court's judgment.


/s/    J. Brett Busby
       Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby.
Do Not Publish — Tex. R. App. P. 47.2(b).